**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED SATES OF AMERICA, | ) |
| | ) |
| v. | )    Criminal No. 19-cr-26-02 (CKK) |
| | ) |
| MAHSA AZIMIRAD, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT RESPONSE TO DEFENDANT'S MOTION FOR GOVERNMENT TO**
**IDENTIFY *BRADY* INFORMATION**

The United States of America hereby respectfully submits its response to the Defendant's Motion for Government to Identify *Brady* Information in the above-captioned case.   In support of this motion, the government relies on the following statement of points and authorities, and any other points and authorities that may be cited at a hearing on this motion.

**Background**

On January 29, 2019, the Defendant was indicted for violations of 18 U.S.C § 371 (Conspiracy), 1347 (Health Care Fraud), and 1343 (Wire Fraud).  Since her indictment, the government has provided fulsome and thorough discovery to the Defendant and gone above and beyond to identify and provide potentially relevant materials.  Specifically, the government has made ten productions since May 2019, encompassing around 83,294 files.  The vast majority of those files, about 81,260 to be specific, were provided nearly two years ago on May 8, 2019. Each production is described in detail below.

- On May 8, 2019, the government made its first production ("Production 1"), which included approximately 81,260 files, encompassing the bulk of the files collected in the preceding five-year investigation.  For example, Production 1

included all files seized from the search of the dental office, the subpoenaed bank records, documents seized from the Defendant's email account pursuant to a warrant, the bulk of the Grand Jury transcripts, and most witness interview memoranda and related notes.  All documents were produced in unredacted format but were covered by the Protective Order in this case.   These files were produced electronically (primarily as PDFs).   The related letter and index provided to Defense for Production 1 are included here as Attachment A, with the names of witnesses redacted.

- On September 12, 2019, the government made its second production ("Production 2"), which included another 899 files from the filter review in the case and the transcript of the lead case agent's testimony in Grand Jury, again in electronic form (PDFs).  The related letter and index provided to Defense for Production 2 are included here as Attachment B, with the names of witnesses redacted.

- On November 15, 2019, a few days after the prior assigned prosecutor, as the Defendant explained in the underlying motion, "informed" the defense "that the government still had not provided all discovery materials" the government made its third production ("Production 3").   Production 3 was sent out one day after the November 15, 2019 letter attached to the Defendant's underlying motion was sent to the government requesting all underlying discovery.  Production 3 included approximately 2,076 files.  A little less than half the files consisted of the co-defendant's jail calls.  Many of the other files had previously been partially provided in Production 1.  For example, Production 3 included all Grand Jury

transcripts with their respective exhibits and all witness memoranda with their respective exhibits and the underlying agent notes.  (Most of these same transcripts and interview memoranda had previously been produced in Production 1.  However, when the prosecutor assigned to the case at the time noticed that the underlying exhibits and agent notes had not been produced in Production 1, they were all reproduced again with those items.)  Production 3 also included other miscellaneous files that the prosecutor assigned to the case at the time noticed as potentially missing from Production 1, such as incorporation documents for the Defendant's company.  In the cover letter sent to Defense with Production 3, the government also flagged any known issues with the production, such as files that had become corrupted or notes from one interview that could not be found.  The cover letter also included a summary of spontaneous statements made by the Defendant during transport.  Finally, the cover letter flagged the ongoing work the assigned prosecutor was doing to ensure that any relevant files from a related civil case or Superior Court case were provided to the Defendant.  The related letter and index provided to Defense for Production 3 are included here as Attachment C, with the names of witnesses redacted.

- On December 6, 2019, the government made its fourth production ("Production 4").  Production 4 consisted of approximately 57 files -- primarily of potentially relevant materials from the related Superior Court cases.   In addition, the related cover letter flagged potentially exculpatory information related to a statement by a witness in connection with the Superior Court case against the Defendant, which had since been dropped.  The related letter and index provided to Defense for

Production 4 are included here as Attachment D, with the names of witnesses redacted.

- On January 9, 2020 the government made its fifth production ("Production 5"). Production 5 consisted of approximately 18 files, including some miscellaneous files from the D.C. Department of Health Care, tax files related to the Defendant's business, and additional banking documents. The related letter and index provided to Defense for Production 5 are included here as Attachment E, with the names of witnesses redacted.

- On January 20, 2020, the government made its sixth production ("Production 6"). Production 6 consisted of two digital downloads on a 6-terabyte hard drive provided by the defense at their request. The first digital download was a digital image of a video recorder seized from the dental office during the search that the government had imaged but never reviewed. (Although it was never reviewed by the government, and therefore the government does not know if any relevant information was on the video recorder, in its November 2019 letter, the government offered to provide it in its entirety to the defense if they wished.) Production 6 also included a digital image of the server from the dental office seized during the search. (In Productions 1 and 3, the government had previously provided defense with all files law enforcement had identified as relevant from that server but offered to provide the full image to the defense, which would naturally be composed almost entirely of the material deemed to not be relevant to the investigation, if they wished.) The letter provided to Defense for Production 6 is included here as Attachment F.

4

- On March 6, 2020, the government made its seventh production ("Production 7"). Production 7 consisted of 43 files, consisting of some additional dental records and D.C. Department of Health Care files.  The related letter and index provided to Defense for Production 7 are included here as Attachment G, with the names of witnesses redacted.

- On April 23, 2020, the government made its eighth production ("Production 8"). Production 8 consisted of one file, a college transcript. The related letter and index provided to Defense for Production 8 are included here as Attachment H.

- On April 7, 2021, the government made its ninth production ("Production 9"). Production 9 consisted of 139 files, which primarily consisted of any interview memoranda drafted in the past year, related notes, and any files that had been subpoenaed in advance of trial.  Production 9 also included two updated Grand Jury transcripts, where the undersigned had noticed mistakes in the prior transcripts, such as a missing page or portion that had been mis-transcribed. The related letter and index provided to Defense for Production 9 are included here as Attachment I, with the names of witnesses redacted.

- On April 26, 2021, the government made its tenth production (Production 10), which consisted of 36 files.  All these files consisted of new interview memoranda and related notes from interviews conducted over the past few weeks in preparation for trial.  The related letter and index provided to Defense for Production 10 are included here as Attachment J, with the names of witnesses redacted.

## ARGUMENT

The government has complied with its obligations under Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).   Over the past two years, the government has made every effort to identify and provide potentially relevant material to the Defendant in this case.  That effort has not just involved providing the underlying raw documents in the case, such as claims submitted to Medicaid and dental records recovered from the dental office where the Defendant works; rather the government has provided all the substantive documents laying out the government's case, such as Grand Jury transcripts and interview memoranda, well before the *Jencks* deadline set by the court.  Indeed, the Defendant in this case has all the Grand Jury transcripts (and exhibits) and all interview memoranda (and related notes and exhibits).  Moreover, the Defendant has had almost all of them since November 2019.  This includes the 109-page Grand Jury transcript of the lead case agent (and over 40 related exhibits) summarizing the entire case.  In addition, where there were known issues between the audio and the transcript, the government has pointed those instances out to the defense and provided the underlying audio recording.  The government has also scoured the case files from related Superior Court cases to provide the Defendant with anything that might be relevant to this case.  As new information has developed, such as any time the government learned of new substantive information in a witness meeting conducted in advance of trial, the government has provided the related interview memoranda and notes.[1]

These files were all produced electronically, with the majority being provided as PDF documents or Excel spreadsheets.  This is often the standard format in criminal cases, where the

---

[1] At this point, the government is aware of only one outstanding subset of materials to provide in discovery, miscellaneous agent emails and notes, which have been compiled and are currently being processed so they can be provided in a more user friendly format.  The government has been told by the individuals in charge of processing the materials that they should be available for review by April 30, 2021, at which point the government intends to review and disclose any potential *Jencks* materials well before the June 11, 2021 deadline.  Similarly, the government will be able to provide any potential *Giglio* by that date, as it will be clear which witnesses will be testifying once we are closer to trial.

government does not know if the Defendant will have access to a document review system, like Relativity, typically used in document-heavy cases.    Because the documents are provided electronically, the Defendant can run text recognition on the files and search through them as needed, just like the government can.  As many of the records include handwritten notations, such as the dental charts, those particular documents are not easily searchable for either the government or the defense. (Nor would the documents be any easier to search if the government had provided a load file with the document.)   To ease review, for the files in Production 1, where these and almost all the other files were produced, the government included a bates label for each of these documents that is content specific -- meaning one can easily discern the topic of the underlying document from the name of the bates-label.  In other words, Patient X's files will have a bates-label including the name "Patient X."   As such, even those documents that include handwritten notes that are not easily searchable, such as patient files, are easily identifiable by searching for the patient's name.

Had the Defendant asked at some point in the past two years to have the materials produced in a different format, such as with a particular load file, the government would no doubt have tried to provide such a format if available.[2]  Similarly, if the Defendant had asked for a better index for the materials produced nearly two years ago, the government would have tried to assist.  Finally, had the Defendant asked for assistance in locating particular types or categories of documents in the file, the government would have tried to assist.  However, instead of making such requests, the Defendant now claims that she is entitled not just to all the material

---

[2] The undersigned has spent the last few months attempting to get the bulk of the materials produced uploaded to a Relativity database to ease review in advance of trial.  To the extent the Defendant actually wants load files for these items, the government will of course try and provide whatever is available, including for instance any available load files from the original document management system that were used to produce the items in Productions 1 and 3. Similarly, to the extent the Defendant would like a more detailed index for particular productions, the government will endeavor to provide it.

laying out the entire case against her, but also to a government index identifying any potentially favorable material within that case.

To be clear, if the government was aware of clear exculpatory evidence on its face – such as a witness claiming that the Defendant was not involved in billing Medicaid, a document showing that the Defendant was forced to assist in billing Medicaid against her will, or a witness claiming that someone besides the Defendant billed Medicaid for fraudulent items without her knowledge – we would provide that information immediately.   However, as far as the assigned prosecutors are aware, no such evidence exists in this case.

Rather, by asking for the government to identify all potential *Brady* information, which is of course defined broadly to include for example impeachment information, information that could bolster a defense, or information that could undermine the government's evidence, the Defendant is essentially asking that the government compile all the evidence supporting any and all potential defenses for her.  That is simply not required under the law.

Each circuit to analyze the issue has held the same -- where the government essentially provides open file discovery to the defense, the government is not required to direct the defendant to potentially exculpatory evidence within the discovery provided (absent bad faith or an effort to purposefully pad the file with extraneous documents).  *See*, *e.g.*, *United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (noting that the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005)("*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.");

8

*United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("Specifically, Stanford states that the 'sheer quantity of dumped data [provided by the government] could not be fully assessed by the Defense under the circumstances.' We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material."); *United States v. Warshak,* 631 F.3d 266, 297 (6th Cir.2010) ("[a]s a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence" but the government cannot purposefully pad an open file with pointless information or purposefully trying to hide information in a voluminous file); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (" The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic)") (internal citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (On *habeas*, defendant claimed that state violated *Brady* by not pointing out a particular statement of a witness that appeared on a videotape following ten minute gap; "The claim fails because the videotape was, in fact, disclosed. Counsel just didn't find [witness's] statement. Rhoades points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one."); *United States v. Jordan,* 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's requests, which included a demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires).  District Courts across the country have reached the same conclusion time and time again. *See*, *e.g.*, *United States v. Ellis*, No. 2:19-cr-693-BRM-1, 2020 U.S. Dist. LEXIS 122287, at *5-6 (D.N.J. July 13, 2020) (denying a defense motion to compel the government to identify *Brady* or *Giglio* within voluminous discovery); *United States v. Parks*, No. 18-CR-0251-CVE, 2019 U.S. Dist.

LEXIS 174444, at *10-11 (N.D. Okla. Oct. 8, 2019) (holding that the government need not identify "Brady/Giglio" information within discovery already produced); *United States v. Indivior Inc.*, No. 1:19CR00016, 2019 U.S. Dist. LEXIS 219573, at *9 (W.D. Va. Dec. 23, 2019) (denying a defense motion to compel the government to provide an "index of potentially exculpatory information due to the sheer volume of discovery"); *United States v. Weaver*, 992 F. Supp. 2d 152 (E.D.N.Y. 2014) (denying defendant request that government be instructed "to conduct immediate review of all documents in its possession in this matter, and identify all *Brady* materials for all defendants."); *United States v. Rubin/Chambers, Dunhill Ins. Servs*., 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) ("the Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure"); and *United States v. W.R. Grace*, 401 F.Supp.2d 1069 (D. Mont. 2005) (concluding that government's manner of disclosing exculpatory material to defendants complied with *Brady* obligations even though government did not identify for defense each document in its possession that was favorable to defense, where government provided defendants with its entire evidentiary database, in searchable format, consisting of 3,389,109 pages of discovery, and, given defendant's inherent knowledge regarding his own documents, there was no reason to believe that defendants were less able than government to locate exculpatory materials within evidentiary database).

In short, the "Government is not required, in other words, to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." *United States v. Runyan,* 290 F.3d 223, 246 (5th Cir. 2002) (citing *United States v. Shoher*, 555 F. Supp. 346, 352 (S.D.N.Y. 1983)).

Imposing a different rule is replete with practical difficulties.  First, in a case like this one, where the government has basically provided open file discovery nearly two years in

advance of trial, the Defendant is equally able to sift through the evidence to identify potentially relevant exculpatory information.  Indeed, the Defendant in this case is *better* suited to this task. The Defendant worked at the dental office that is the subject of the case for years.  She was intimately familiar with the employees, patients, and record keeping systems.  In addition, as it so happens, the Defendant's attorneys have actually been on this case since 2019, while both current prosecutors were only assigned to the case late last year.  In other words, the Defendant and her attorneys have had the underlying material for years longer but now expect the newly assigned prosecutors to both prepare for trial and identify all potentially relevant evidence in her favor at the same time.  As explained in *United States v. Ohle*, "placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client. This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located."  No. S3 08 CR 1109 (JSR), 2011 U.S. Dist. LEXIS 12581, at *11-13 (S.D.N.Y. 2011).

The Defendant argues that she has limited resources and a small defense team, requiring a deviation from the general rule followed across the country.  Yet, the Defendant is represented by a sophisticated law firm with ten offices nationwide, which boasts that "[w]e are uniquely qualified to defend federal and state criminal charges. Our legal team includes former assistant U.S. attorneys [and] supervisors and section leaders in the U.S. Department of Justice. . . . We also boast decades of courtroom experience in trying complex criminal cases."  *See* https://www.bradley.com/offices and https://www.bradley.com/practices-and-

industries/practices/government-enforcement-and-investigations (last visited April 26, 2021).

Moreover, lead counsel, who again has been on this case since 2019, is extremely experienced in

this area and the defense team is apparently so large that the COVID-19 -restrictions limiting

them to only two attorneys at the defense table are far too onerous. *See Def. Mot. to Cont.* (Dkt.

116) at 7 ("As might be expected for a complex fraud trial, the defense team will likely consist of

multiple attorneys, a paralegal, and a litigation technical support person, in addition to witnesses,

consulting experts, and an investigator.")  Moreover, the Defendant is alleged to have personally

made over $1.4 million dollars in the underlying fraud scheme and is a far cry from an individual

with limited resources.

   Second, asking the government to specifically identify all potential evidence supporting

the defense or undermining the government's case is essentially asking for the impossible.  The

Defendant has made a blanket request to identify all *Brady* material without identifying any

specific category or type of information she is seeking.  This is not a crime where a particular

defense is obvious, such as an identification defense in a case of violence by a stranger or a self-

defense argument in a heated dispute.  This is a fraud case that could involve a variety of

potential defense theories the Defendant may pursue.  As a result, the government does not know

the defense theory in this case.  Therefore, the government does not know what type of

seemingly innocuous evidence might bolster any particular theory. The government does not

know what witnesses the defense views as important and which ones it does not.  Therefore, the

government does not know what types of minor inconsistencies in witness statements might

matter to the defense.  The government cannot and did not know any of this when providing

discovery, which is why in this case, where there are no witness security concerns that cannot be

handled with a protective order, the government essentially opted for open file discovery.  To

now require the government to engage in a high-stakes guessing game where it is required to somehow identify all possible potentially exculpatory evidence without knowing the defense theory relied upon by the Defendant not only imposes an unfair burden on the government, but also will lead to endless additional litigation. *See United States v. Meek,* No. 1:19-cr-00378-JMS-MJD, 2021 U.S. Dist. LEXIS 52121, at *18-19 (S.D. Ind. 2021)("Finally, aside from the burden that the requested order would impose on the Government, Defendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense. Defendants do not generally allege that the Government has withheld exculpatory material. Rather, they simply want to know what specific material the Government believes will help them. To order the Government to go beyond simply producing *Brady* material and order it to identify or label *already produced* material as covered by *Brady*—and by omission, identify non-*Brady* material—only invites future disputes as to whether the Government did an adequate job of identifying such material or characterized the material consistent with the Defendants' view of it.")

To avoid endless disputes about what is discoverable and ensure that all potentially exculpatory evidence (regardless of the particular defense theory chosen by the defense) is provided, the government provided the Defendant with far more than the law requires and provided all witness statements, notes, and Grand Jury transcripts well in advance of trial (and most over two years before trial. Given that the Defendant has had all this and even had the lead case agent's 109-page Grand Jury transcript summarizing the case, the government's case is not some complex mystery shrouded in secrecy or some guessing game for the Defendant. It has been laid out for the Defendant in multiple ways.[3] Yet now the Defendant wants the government

---

[3] Based on discussions with defense counsel, there also appears to have been a reverse proffer conducted in 2019, laying the case out in further detail.

to undergo a high-stakes guessing game in reverse and intuit all the evidence that might be potentially exculpatory in all the files without knowing the Defendant's theory of defense. That is not required under the law nor necessary. The government's discovery in this case has provided the Defendant with all the information she needs to craft her defense and investigate additional avenues to defend the case. Moreover, given that almost two years has passed since the bulk of that discovery was provided, the Defendant has had ample time to complete this effort.

Nevertheless, the Defendant, relying primarily on two D.C. District Court cases to support her argument, now moves the Court to require the government to identify and designate all *Brady* information. Those cases both deviate from the caselaw described above analyzing this issue, and in any event are distinguishable from the case at hand.

First, in *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998), the government had given the defendant over 600,000 documents but failed to identify any documents relevant to the case until after the defendant filed a motion to compel. In contrast, here the universe of documents is much smaller, around 83,000 documents. Moreover, the documents provided here include all witness statements (including Grand Jury transcripts and related exhibits) and including summary testimony by the lead case agent in Grand Jury (and all related exhibits). In comparison, in *Hsia*, the government only agreed to provide *Jencks* material two days before trial and did not even identify any relevant documents until after the defendant had filer her motion to compel. In addition, based on a review of the docket for that case, *Hsia* had been indicted only a few months prior to filing the related motion to compel the government to identify exculpatory information -- meaning the timeframe in which the defendant would have to review the provided discovery was likely much more compressed than this one. (Given her

indictment only months before this ruling, it seems unlikely that the court was dealing with a situation like the present case, where the government provided most of the documents nearly two years in advance of the Defendant's motion.)  Overall, unlike in *Hsia*, here the Defendant has been provided a manageable universe of relevant evidence, has had much of the key evidence relied upon by the government highlighted in the various Grand Jury transcripts she has received, and has had over two years with the bulk of this evidence to sort through it and identify relevant information.

Similarly, *United States v. Saffarinia*, 424 F. Supp. 3d 46, 82 (D.D.C. 2020), is distinguishable.  The government in *Saffarinia* provided the defendant with "more than one million records and 3.5 million pages of documents," over 200,000 of which were emails that are not easily reviewable without reading each one.  *Id*.  Here, the government has provided a much more limited number of documents, around 83,000, most of which fall into easily identifiable and reviewable categories of documents (such as Medicaid claims, witness interviews, patient files, and bank records) and most of which involve documents the Defendant is intimately familiar with from her years at working at the dental office.  In addition, the defense counsel in *Saffarina* was handling the matter "*pro bono* with time constraints and limited financial resources." *Id.* at 92.  As described in detail above, the Defendant's counsel is extremely experienced, works at a sophisticated firm, and includes a team with multiple attorneys assigned to assist in the trial.  Unlike in *Saffarinia*, the "fundamental fairness" concerns that appeared to drive the court's decision are simply not implicated by this case.  There is no reason here to deviate from the standard general rule set forth by circuits and district courts across the country.[4]

---

[4] The Defendant also cites two other unpublished opinions to support her position: *United States v. Salyer*, No. 10-cr-00061, 2010 WL 3036444, at *6 (E.D. Cal. Aug. 2, 2010) and *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 3687864,*6, 2015 U.S. Dist. LEXIS 76287, *6 (S.D. W. Va. June 12, 2015).  Both cases are readily distinguishable.  In *Blankenship,* the defense claimed that the government had hid *Brady* material by providing a

The Defendant has had almost all the documents in this case since 2019.  As far as the government is aware, the Defendant has never requested a different format for the files, such as a load file, or a different index for the files, despite the fact that such consultation is required under the local rules before filing discovery motions.  If the Defendant were truly concerned about an inability to manage and review the documents provided in this case without assistance from the government in specifically identifying potentially exculpatory material, it had ample opportunity to raise such issues over the past two years that the Defendant has had the bulk of the files.  Moreover, with over 10 weeks until trial, defense counsel – given its sophistication and ample firm resources – still remains in position to undertake any needed digital organization and review of the remaining documents as needed for trial – particularly given that the government's discovery includes Grand Jury testimony summarizing the government's evidence and theory of the case, that is, a road map of the prosecution.

---

"massive and allegedly unorganized production" of over 4 million pages where the government allegedly admitted that unspecified "*Brady* material" was located in that production.  In *Salyer*, the government had provided millions of pages of electronic documents and two storage containers of hard copy documents.  Again, the volume of materials here is no where near that large.

WHEREFORE, the United States respectfully opposes the Defendant's motion for the Government to identify *Brady* information.

Respectfully submitted,

/s/ *Melissa Jackson*
Melissa Jackson (D.C. Bar No. 996787)
Assistant U.S. Attorney
Fraud Section
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW
Washington, DC 20530
(202) 252-7786
Melissa.Jackson@usdoj.gov

/s/ *Gary A. Winters*
Gary A. Winters (D.C. Bar No. 439376)
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 598-2382
Gary.Winters@usdoj.gov